# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-413


IBERIA FINANCIAL SERVICES, LLC

VERSUS

JOHN A. MITCHELL


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-95
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of Billy Howard Ezell, D. Kent Savoie, and Van H. Kyzar, Judges.


**AFFIRMED.**


**Kyzar, J., dissents and assigns reasons.**

**Russell J. Stutes, Jr.**
**Shelley B. Bouillion**
**Stutes & Lavergne, LLC**
**600 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 433-0022**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **John A. Mitchell**

**Vernon Ed McGuire, III**
**Plauche', Smith & Nieset**
**Post Office Drawer 1705**
**Lake Charles, Louisiana 70602**
**(337) 436-0522**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Iberia Financial Services, LLC**

**C. Parker Kilgore**
**Andrew R. Lee**
**Jones Walker L.L.P.**
**Four United Plaza, Fifth Floor**
**8555 United Plaza Boulevard**
**Baton Rouge, Louisiana 70809-7000**
**(225) 248-2181**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Iberia Financial Services, LLC**

**SAVOIE, Judge.**

Plaintiff Iberia Financial Services, LLC (IFS) appeals the judgment of the trial court, granting Defendant John A. Mitchell's Exceptions of No Right of Action and No Cause of Action and dismissing IFS's claims in their entirety. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

John Mitchell began working for IFS as a Junior Investment Representative on December 14, 2009, eventually rising through the ranks to become a Senior Investment Advisor. He provided financial and insurance services to IFS's clients and had assets under management in excess of $100,000,000. Mitchell resigned his position with IFS on November 30, 2018.

On January 7, 2019, IFS filed a Verified Petition for Temporary Restraining Order, Injunctive Relief, and Damages. The Temporary Restraining Order was signed the same day. The petition claims that Mitchell, upon leaving IFS, began working for LPL Financial, LLC (LPL) on December 1, 2018. IFS alleges that Mitchell moved 108 accounts totaling over $21,000,000 with him to LPL in violation of a non-solicitation agreement prohibiting him from soliciting IFS's clients.

In the petition, IFS explains that it is not a broker-dealer of securities. Rather, it contracts with investment advisors to provide these services. Iberia Bank, IFS's parent company, entered into a networking agreement with Infinex Investments, Inc. (Infinex). Through this agreement, IFS was able to offer securities brokerage, investment advisory, and insurance products and services. The investment advisors also entered into an agreement with Infinex separately in order to have access to the services that Infinex provides. John Mitchell entered into one of these agreements. According to the agreement, Mitchell became a "registered representative,

investment advisor agent and/or licensed insurance producer of Infinex." IFS is a third-party beneficiary of the contract between Mitchell and Infinex.

Mitchell's agreement with Infinex included a non-solicitation clause. Paragraph 8(c) states, in pertinent part:

> Except as required in connection with the performance of your duties as an Infinex Representative as contemplated hereunder, you agree that, during your engagement under this Agreement and for a period of one (1) year thereafter, you will not, either directly or indirectly, for your own account or as an agent, servant, employee, officer, director, shareholder, partner, member or manager of any entity, or member of any firm, or participant in any venture:
>
> . . . .
>
> (iii)    solicit the securities brokerage, investment advisory or insurance business of, or otherwise contact, any customer whose name became know to you as a direct or indirect result of your engagement as an Infinex Representative in locations where the Representative agrees are contained in Appendix A hereto.[1]

IFS claims in the petition that Mitchell contacted IFS's customers, requesting that they move their financial and insurance business to his new firm. IFS alleges that it has sustained significant damage as a result of Mitchell's breach of the non-solicitation agreement.

IFS filed this suit as a third-party beneficiary of Mitchell's contract with Infinex. Infinex is not a party to the lawsuit. Paragraph 8(f) of the agreement states:

> You agree and acknowledge that [IFS] is an intended third party beneficiary of your obligations under this paragraph 8 and that, although not a signatory to this Agreement, [IFS] shall be entitled to enforce your obligations hereunder.

In response to the petition, Mitchell filed an Answer to Petition, General Denial, Affirmative Defenses, Exceptions of No Right and No Cause of Action, and

---

[1] Appendix A lists numerous parishes and counties located across the country, including Calcasieu Parish.

Motion for Expedited Hearing. Mitchell argued that the agreement was null and void under La.R.S. 23:921 because it would "substantially restrain Mitchell from exercising his lawful profession, trade and business, in ways that greatly exceed the limited exceptions permitted by" the statute.

The preliminary injunction and the exceptions were set for hearing on January 29, 2019. IFS withdrew its' preliminary injunction, leaving only Mitchell's exceptions to be heard. After the hearing, the trial court took the matter under advisement. In open court, on January 31, 2019, the trial court granted the exception of no cause of action and the exception of no right of action, dismissing IFS's claims. In addition, the trial court granted Mitchell's request for attorney's fees, ordering IFS to pay them in the amount of $27,802.75. Judgment was signed March 6, 2019. IFS now appeals the trial court's judgment. Mitchell answered the appeal, requesting additional attorney's fees for work done on appeal.

**ASSIGNMENTS OF ERROR**

1. The trial court erred in admitting and considering evidence in support of the Defendant/Appellee's No Cause of Action Exception.

2. The trial court erred in granting the Defendant/Appellee's Exception of No Cause of Action on the premise and finding that he, as an independent contractor, could not be subject to a non-solicitation agreement.

3. The trial court erred in granting the Defendant/Appellee's Exception of No Cause of Action and dismissing with prejudice IFS's breach of contract claim against him for his retention and use of IFS's confidential information in violation of his agreement.

4. The trial court erred in granting the Defendant/Appellee's Exception of No Cause of Action and dismissing with prejudice IFS's claim for injunctive relief related to the Defendant/Appellee's continuing non-solicitation and confidentiality agreement.

5. The trial court erred in granting the Defendant/Appellee's Exception of No Right of Action and dismissing with prejudice IFS's claims.

6. The trial court erred in awarding attorneys' fees to the Defendant/Appellee.

## DISCUSSION

### I. *Standard of Review*

The appellate standard of review on an exception of no cause of action is a *de novo* review. *Aycock v. Chicola*, 09-563 (La.App. 3 Cir. 12/16/09), 27 So.3d 1005. Similarly, "[b]ecause it involves a question of law, the standard of review of the trial court's granting of the exception of no right of action is *de novo* review." *Bennett v. Porter*, 10-1088, p. 8 (La.App. 3 Cir. 3/9/11), 58 So.3d 663, 670.

### II. *Exception of No Cause Action*

In *Ramey v. DeCaire,* 03-1299, pp. 7-8 (La. 3/19/04), 869 So.2d 114, 118-19 (citations omitted), our supreme court stated:

> A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. No evidence may be introduced to support or controvert an exception of no cause of action. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.
>
> Louisiana has chosen a system of fact pleading. Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition. However, the mere conclusions of the plaintiff unsupported by facts does not set forth a cause of action.
>
> The burden of demonstrating that the petition states no cause of action is upon the mover. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is based solely on the sufficiency of the petition. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief.

4

IFS first argues that the trial court erred when it considered evidence outside the scope of the pleadings. After a review of the record, the trial court did admit the 1442 deposition of IFS representative Kendra Cain; however, it was clearly submitted in support of the Exception of No Right of Action and accepted as such. Evidence is admissible on an exception of no right of action. *Bennett*, 58 So.3d 663. IFS also complains that the trial court considered the agreement at issue. IFS attached the agreement to its' petition. An exception of no cause of action is triable on the face of the petition and any annexed documents. *Kuebler v. Martin*, 578 So.2d 113 (La.1991). Therefore, we find that assignment of error number one lacks merit.

Next, IFS contends the trial court erred in finding that Mitchell, as an independent contractor, was not subject to a non-solicitation agreement. The law applicable can be found in La.R.S. 23:921. Louisiana Revised Statutes 23:921(A)(1) states:

> Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

IFS argues that the non-solicitation agreement falls under an exception found in La.R.S. 23:921(C), which states:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent

5

contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

The language at issue in the agreement is found in Paragraph 8(c) and states:

Except as required in connection with the performance of your duties as an Infinex Representative as contemplated hereunder, you agree that, during your engagement under this Agreement and for a period of one (1) year thereafter, you will not, either directly or indirectly, for your own account or as an agent, servant, employee, officer, director, shareholder, partner, member or manager of any entity, or member of any firm, or participant in any venture:

. . . .

(iii)    solicit the securities brokerage, investment advisory or insurance business of, or otherwise contact, any customer whose name became known to you as a direct or indirect result of your engagement as an Infinex Representative in locations where the Representative agrees are contained in Appendix A hereto.

Mitchell argues that the non-solicitation agreement is null and void because La.R.S. 23:921(C) allows independent contractors to be refrained from "carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted[.]"  The exception found in this paragraph does not exclude independent contractors from soliciting customers, as it does elsewhere in La.R.S. 23:921.  As an example, in allowing for an exception between employers and employees, La.R.S. 23:921 specifically states that they can agree "to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer[.]"  In La.R.S. 23:921(B), anyone "who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold[.]"

The seminal case in this area of the law is *Swat 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294. In *Swat 24*, an employer sought to injunctive relief, seeking to prohibit its' previous employee from engaging in business based on a non-competition agreement. Beginning its discussion, the Louisiana Supreme Court explained, "Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees." *Id*. at 298. Historically, Louisiana's public policy has been to prohibit or severely restrict them. *Id*. This public policy "is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *Id*. at 298. The supreme court states that "[b]ecause such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id*.

When drafting La.R.S. 23:921, the Legislature included language which allows certain parties to refrain from soliciting customers; however, this language was specifically excluded in the exception that applies to independent contractors. We must assume that this was intentional and not a mere oversight. Further, we must strictly construe this statute. The statute is clear. Independent contractors cannot be refrained from soliciting customers. As such, we find that a claim for non-solicitation against an independent contractor does not exist.

### III.  *Exception of No Right of Action*

IFS contends that the trial court erred in granting Mitchell's No Right of Action and dismissing its claims with prejudice. We disagree.

As discussed above, the agreement at issue must be strictly construed. Louisiana Revised Statutes 23:921(H) explains that "[a]ny agreement covered by Subsection . . . C . . . shall be considered an obligation not to do, and failure to

7

perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived." This agreement is governed by Subsection C of the statute because it concerns an independent contractor. Louisiana Revised Statutes 23:921 specifically states that *the obligee* is entitled to recover damages in the event of a failure to perform under the contract. IFS is not the obligee under this contract. Infinex is the obligee, while Mitchell is the obligor. Paragraph 8(f) of the agreement states:

> You agree and acknowledge that [IFS] is an intended third party beneficiary of your obligations under this paragraph 8 and that, although not a signatory to this Agreement, [IFS] shall be entitled to enforce your obligations hereunder.

IFS is a third party beneficiary to this contract as clearly stated. While, the agreement purports to entitle IFS to enforce the obligations found therein, this right is in derogation of La.R.S. 23:921(H). Strictly construing the agreement, we find that the obligee under the contract is the party to the agreement, Infinex. Consequently, IFS does not have a right of action to bring this lawsuit.

Having found that IFS lacks a cause of action for non-solicitation and lacks a right of action to bring a claim under the agreement, we find the assignments of error regarding confidential information and trade secrets to be moot. We now move on to the issue of attorney's fees.

### IV.    Attorney's Fees

IFS complains that the trial court erred in awarding Mitchell attorney's fees because it found the agreement unenforceable. The attorney's fees clause is found in Section 15 of the agreement. It states:

> In the event of a breach of this Agreement, the prevailing party in any resulting litigation or arbitration shall recover its costs incurred in enforcing its rights with respect to such breach. Such costs shall include,

without limitation, reasonable internal and external attorneys' fees and litigation expenses.

This lawsuit was brought by IFS based on allegations of a breach of this agreement. We, along with the trial court, have determined that IFS did not have a right to bring these claims and lacked a cause of action for non-solicitation. Therefore, Mitchell is the prevailing party. The fact that we have found part of the agreement to be unenforceable has no bearing on whether attorney's fees can be awarded. Section 12 of the agreement provides:

> All agreements, provisions and covenants contained herein are severable and in the event that any one or more of them shall be held to be invalid, illegal or unenforceable in any respect by any court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected thereby and this Agreement shall be interpreted as if such invalid, illegal or unenforceable agreements, provision or covenants were not contained herein.

Further, La.Civ.Code art. 2034 states that "[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision." Therefore, based on the law and the language found in the agreement, we find the trial court did not err in awarding attorney's fees.

## DECREE

The trial court's judgment granting John A. Mitchell's exceptions of no right of action and no cause of action, dismissing all claims asserted by Iberia Financial Services, LLC, and awarding attorney's fees to John A. Mitchell and against Iberia Financial Services, LLC is affirmed. We grant John A. Mitchell's request for attorney's fees on appeal and set the sum at $5,000 to be ordered against Iberia Financial Services, LLC.

**AFFIRMED.**

9

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-413

IBERIA FINANCIAL SERVICES, LLC

VERSUS

JOHN A. MITCHELL

**Kyzar, Judge,** dissents and assigns reasons.

I respectfully dissent from the opinion reached by the majority, which has the effect of sanctioning the duplicitous outcome that the non-solicitation clause at issue was designed to prevent. In doing so, the majority fails to recognize the nature of the unique business relationship involved herein. This relationship allows a bank to expand its business platform by offering financial services such as securities trading accounts, investment advisory services, and insurance products and services to its clients.

Financial brokers[1] or dealers[2] are regulated by the United States Code, which requires mandatory registration before a broker or dealer is allowed "to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills[.]" 15 U.S.C. § 78o(a)(1). Thus, for a bank to provide financial services to its customers, it must either register as a broker with the Securities

---

[1] "[A]ny person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A).

[2] "[A]ny person engaged in the business of buying and selling securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A).

Exchange Commission (SEC) or become affiliated with a registered broker through a third party brokerage arrangement. 15 U.S.C. § 78c(a)(4)(B)(i). If a bank chooses the affiliation route, any employee that provides financial services to its clients, other than "clerical or ministerial functions in connection with brokerage transactions[,]" must also associate with the broker. 15 U.S.C. 78c(a)(4)(B)(i)(V).[3] Given the intricacies involved in the registration process and the responsibilities inherent in brokerage or dealer positions, many banks chose to affiliate with a broker or dealer, just as Iberia Financial Services, LLC (IFS) did with Infinex Investments, Inc. (Infinex).

Infinex is registered as a broker-dealer with the SEC. Iberia, through its affiliation with Infinex, was able to offer securities brokerage, investment advice, and insurance products and services to its customers. Mr. Mitchell, who was employed by IFS to provide these services to its clients, entered into a registered representative agreement with Infinex. Absent this agreement, Mr. Mitchell could not carry out those duties for IFS.

According to the agreement, Mr. Mitchell became a "registered representative, investment advisor agent and/or licensed insurance producer" of Infinex, and IFS became a third-party beneficiary of the agreement. Paragraph 8(c)(iii) of the agreement specifically included a non-solicitation clause to last for a period of one year following the termination of Mr. Mitchell's association with Infinex. In the clause, Mr. Mitchell agreed that he would not, either on his own or on behalf of any other entity "solicit the securities brokerage, investment advisory or insurance business of, or otherwise contact, any customer whose name became known to you

---

[3] Pursuant to 15 U.S. § 78c(a)(18), "a person associated with a broker" means, in part, "any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer[.]"

2

as a direct or indirect result of your engagement as an Infinex Representative in locations where the Representative agrees are contained in Appendix A hereto." [4] In Paragraph 8(f), Mr. Mitchell agreed and acknowledged that IFS was "an intended third party beneficiary of your obligations under this paragraph 8 and that, although not a signatory to this Agreement, [IFS] shall be entitled to enforce your obligations hereunder."

Although the majority notes that the relationship between Mr. Mitchell and Infinex was that of an independent contractor, it fails to recognize that Infinex specifically included the non-solicitation clause to protect IFS, Mr. Mitchell's direct employer. As Infinex profits from IFS's use of its brokerage, advisory, and investment, and insurance services, it certainly was in its own and IFS' interest to include this provision. Otherwise, an employee, such as Mr. Mitchell, would be free to build up a client base utilizing the bank's clientele before leaving its employ and offering his services, as well as the bank's accounts, to the highest bidding competitor. The opinion of the majority permits just such an outcome, as happened here to the tune of IFS and Iberia Bank, its parent company, loosing 108 accounts alleged to be worth over $21,000,000.00. The agreement between by Mr. Mitchell and Infinex prohibited such an occurrence from happening as IFS was the primary entity that the clause was designed to protect. As a third party beneficiary of the agreement, IFS has standing, as Mr. Mitchell's employer, to enforce the non-solicitation clause against him.

Louisiana Civil Code Article 1985 provides that "[c]ontracts may produce effects for third persons only when provided by law." Comment (b) of the Revision Comments—1984 states, "Because of the ever-increasing importance of third-party

---

[4] Appendix A lists numerous parishes and counties located across the country, including Calcasieu Parish.

3

beneficiary contracts, this Article provides that contracts bind only the parties unless they have lawfully stipulated otherwise." Stipulations pour autrui are favored in Louisiana. *Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231 So.2d 347 (1969); *Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 01-345 (La.App. 3 Cir. 6/20/01), 790 So.2d 93, *writ denied*, 01-2115 (La. 7/26/01), 794 So.2d 834.

In *F. Benjamin Toledano Insurance Agency v. Toledano*, 292 So.2d 268 (La.App. 4 Cir. 1974), the court held that plaintiff, who was not a party to the sale of defendant's insurance agency, stated a cause of action against defendant based on a stipulation pour autrui created by the non-competition agreement that defendant agreed upon as part of the sale.

For comparison, the jurisprudence has also held that non-compete and non-solicitation agreements are assignable depending on the language of the agreement. Louisiana Civil Code Article 2642 provides that all rights are assignable, except those rights that are "strictly personal." "Rights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects." La.Civ.Code art. 1984. "An obligation is heritable when the performance may be enforced by a successor of the obligee or against a successor of the obligor." La.Civ.Code art. 1765. "Every obligation is deemed heritable as to all parties, except when the contrary results from the terms or from the nature of the contract." *Id.* "A heritable obligation is also transferrable between living persons." *Id.* "An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor." La.Civ.Code art. 1766. If the performance is strictly intended for the benefit of the obligee, then the obligation, with regard to the obligee, is strictly personal. *Id.*

4

In *Jeansonne v. El Hindy*, 413 So.2d 999 (La.App. 4 Cir. 1982), the court affirmed a trial court's finding that a non-competition agreement was personal, and thus, non-transferrable. The court stated:

> Our decision is made in view of the strict interpretation that we have been mandated to give to non-competition agreements because of their nature. Such agreements are to be strictly construed in favor of freedom of competition. *E.g. Railway Audit & Inspection Co. v. Pendleton*, 175 La. 4, 142 So. 781 (1932).

> In *Thomas v. McCrery*, 147 So.2d 467 (La.App.2d Cir. 1962), the defendant, an optometrist, sold his business to another optometrist, Roger Shaw. A non-competition agreement in favor of Shaw, similar to the one now at issue, was contained in the act of sale. Shaw then sold the business to the plaintiff, another optometrist. After the sale, the defendant began to practice optometry in violation of the non-competition agreement. The issue in *Thomas*, as in this case, was whether the agreement not to compete was heritable. The court considered the facts of the case in light of Article 1999 of the Louisiana Civil Code which provides:

>> "Every obligation shall be deemed to be heritable as to both parties, unless the contrary be specially expressed or necessarily implied from the nature of the contract."

> The court noted that although an obligation is presumed heritable, the language in the non-competition agreement was a special expression of the parties' intent that the agreement was for the benefit of the named obligee only. *Id.* at 469. *See generally* S. Litvinoff, 2 Obligations § 156 (1975) as contained in 7 La.Civ.L. Treatise.

> Our case is similar. Although the agreement is styled as an amendment to the sale of stock, it clearly states that the obligee is El Hindy, not Deluxe Bell. Although Deluxe Bell is mentioned in the agreement it is only as a point of geographic reference.

> The agreement is a specific expression of the parties' intent that the agreement is made by the Jeansonnes in favor of El Hindy personally and not Deluxe Bell.

*Id.* at 1000 (footnote omitted).

In *Thomas v. McCrery*, 147 So.2d 467 (La.App. 2 Cir. 1962), defendant's sale of his optometry business to another optometrist included an agreement by defendant not to compete against the purchaser in Vernon and Sabine Parishes for a period of five years. The purchaser then sold the business to plaintiff. Although the purchaser,

5

now seller, agreed not to compete against plaintiff in Vernon and Sabine Parishes for five years, the agreement was silent as to defendant's non-compete agreement. When defendant reentered the optometry business two years later, plaintiff sought to enjoin him under the original non-compete agreement. In finding that the original agreement was personal and, thus, non-heritable, the court stated:

> However, in the case at bar by the very language of the agreement the obligation not to do is limited to one person, i.e. "agrees not to compete * * * in opposition to Roger F. Shaw, Jr." These quoted words *specially express* an intention that the covenant is for the benefit of the named obligee only. The words of limitation are clear and unambiguous and require no resort to the presumption of LSA-C.C. Article 1999, but on the contrary render the agreement personal as to Shaw and thus not heritable nor assignable.

> Our courts have held that contracts which impose restrictions on the right of a party to engage in a business or occupation are to be strictly construed in favor of the interest of the covenanter, since such contracts have a tendency, at best, to interfere with one in earning a livelihood, even though they do not exceed legal bounds. Railway Audit & Inspection Co., Inc. v. Pendleton, 175 La. 4, 142 So. 781 (1932); Simmons v. Johnson (La.App. 2 Cir., 1942) 11 So.2d 710; and S. & R. Gas Company v. Stephens (La.App. 2 Cir., 1956) 90 So.2d 487.

> The obligation being personal, under the provisions of LSA-C.C. Art. 1997 none but the obligee can enforce the performance and the judgment recalling the rule and dismissing plaintiff's suit is affirmed at appellant's cost.

*Id.* at 469.

In *CDI Corp. v. Hough*, 08-218 (La.App. 1 Cir. 3/27/09), 9 So.3d 282, the first circuit rejected plaintiff's argument that a non-solicitation agreement was strictly personal and held that it transferred by operation of law to the successor corporation after a merger between it and its parent corporation. In doing so, the court noted that the agreement at issue did not state that it was not heritable, nor could it "find any statute or law that provides that an employment agreement is not heritable." *Id.* at 293.

6

Here, the specific wording of the agreement between Infinex and Mr. Mitchell created a stipulation pour autrui in favor of IFS; thus, the obligation not to solicit was heritable and subject to transfer between living persons. La.Civ.Code art. 1765. Based on the transferability or assignability of non-competition and non-solicitation agreements and because stipulations pour autrui are favored by law, I would find that the stipulation pour autrui at issue is valid and enforceable by IFS.

Furthermore, while the scope of La.R.S. 23:921(C) differs between non-competition and a non-solicitation agreements in regards to employers and employees vis a vis principals and independent contractors, I find this distinction irrelevant as the non-solicitation clause at issue was directly intended to benefit IFS, Mr. Mitchell's employer; and Mr. Mitchell agreed to its terms. Pursuant to La.R.S. 23:921, Mr. Mitchell could have entered into enforceable non-competition and non-solicitation agreements with IFS. Based on this fact, as well as the favored status of stipulations pour autrui, I would find that IFS, as obligee, has the right to demand performance of the non-solicitation clause from Mr. Mitchell, the obligor.

Accordingly, I would reverse the judgment of the trial court granting the exceptions of no right and no cause of action in favor of Mr. Mitchell, reverse the award of attorney fees to Mr. Mitchell, and remand the matter to the trial court for further proceedings.

7